IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BERKLEY INSURANCE CO., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 24-cv-256-DWD |
| | ) |
| JASON CARAWAY, | ) |
| WOWL TRUST TRUSTEE | ) |
| DEAN DEVERT, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Defendant Jason Caraway ("Caraway"), formerly an attorney at Caraway & Broombaugh, is currently serving a 90-month sentence for embezzling funds from both his clients and his law firm. Before his indictment, the Wowl Trust, through Trustee Dean Devert (the "Wowl Trust"), filed a lawsuit against Caraway alleging that he owed $753,611.59 under a 2013 Sale Agreement and Promissory Note executed in connection with Caraway's purchase of a law firm.

In this declaratory judgment action, Plaintiff Berkley Insurance Company ("BIC"), which issued a Lawyers Professional Liability Policy to Caraway (the "Policy"), seeks a determination that it has no duty to defend or indemnify Caraway in the underlying lawsuit filed by the Wowl Trust. Having failed to timely answer or appear, Caraway is

1

in default,[1] but the Wowl Trust has assumed the burden of establishing that its lawsuit is covered by the policy BIC issued to Caraway.

Presently before the Court is BIC's Motion for Summary Judgment as to the Wowl Trust and for Default Judgment as to Caraway. (Doc. 43). For the reasons discussed below, BIC's Motion for Summary Judgment is **GRANTED** and its request for default judgment is **DENIED** as **MOOT**.

## I.   UNDISPUTED MATERIAL FACTS[2]

### A. The Underlying Lawsuit

On, February 9, 2023, the Wowl Trust filed a lawsuit against Caraway as the sole defendant styled *Wowl Trust – Trustee Dean Devert v. Jason Caraway*, case number

---

[1] On October 24, 2024, the Clerk entered a default against Wowl Trust and Caraway for failing to answer or otherwise plead in response to BIC's Amended Complaint. (Doc. 22). On November 5, 2024, the Court set aside the default entered against Wowl Trust and granted it leave to file its proposed answer. (Doc. 32). On April 2, 2025, the Court denied Caraway's motion to vacate the default entered against him. (Doc. 24). Caraway has not responded to the instant motion.

[2] The Wowl Trust did not dispute BIC's Statement of Material Facts. As such, those facts are deemed admitted for purposes of summary judgment. SDIL-LR 56.1(g). Further, the Court disregards any asserted facts that are not supported by proper citations to the record. SDIL-LR 56.1(c). *See also Friend v. Valley View Community Unit School Dist.* 365U, 789 F.3d 707, 710-711 (district court did not abuse its discretion in disregarding facts contained in statement of additional facts that were not supported by proper citations to the record). For instance, the Wowl Trust states as follows in its statement of material facts:

> While Plaintiff claims not to have had any notice of this underlying lawsuit against Caraway prior to July 20, 2023, it is noteworthy that *Terri Harmon v. Jason Caraway*, 23LA205 was filed February 24, 2023, with entries of appearances filed April 25, 2023, and April 27, 2023, and an Answer to the Complaint filed on June 1, 2023. Also, *Thomas Dennis v. Jason Caraway*, 23LA205 was also filed on May 18, 2023.

(Doc. 46 ¶ 17). Aside from being unclear why activity in the referenced lawsuits is relevant to when BIC received notice of the Wowl Trust's lawsuit against Caraway, the factual assertions are deficient as they are not supported by any citations to the record and will be disregarded by the Court. Additionally, the following alleged facts are not supported by a citation to the record or are not supported by the record cited: (1) Statement of Material Facts ¶ 1 (no citation to the record); (2) Statement of Material Facts ¶ 2, assertion that the Sale Agreement was signed by Kolker Law Office, P.C., not supported by the record because the Seller's name is redacted; and (3) Statement of Material Facts ¶ 10 (no citation to the record).

23LA0142, in St. Clair County, Illinois (the "Underlying Lawsuit"). (Doc. 44 ¶¶ 1, 3). The Underlying Lawsuit sought relief from Caraway based on his failure to make payments under the terms of a Sale Agreement and Promissory Note. (Doc. 44 ¶ 4; Doc. 46 ¶ 13). The Wowl Trust served Caraway with the complaint in the Underlying Lawsuit on February 11, 2023. (Doc. 44 ¶ 2; Doc. 46 ¶ 12).

The Sale Agreement is a contract between an unidentified seller (redacted by the Wowl Trust, hereinafter referred to as the "Seller"),[3] Kolker Law Offices, P.C., and Caraway for the sale of a law firm. (Doc. 44 ¶¶ 5-7; Doc. 46 ¶ 2). The Sale Agreement was signed on March 7, 2013 by Caraway "individually and as Incoming President of Kolker Law Offices." (Doc. 44 ¶ 6; Doc. 46 ¶ 2). The Seller retained liens on "cases and fees in which the client or prospective client retained, or made contact with, [Kolker Law Offices] or any of its attorneys prior to March 8, 2013, and those cases or files in which any legal services were performed, or advice given, or the matter was contemplated to be a fee producing matter by an attorney of [Kolker Law Offices] prior to March 8, 2013." (Doc. 44 ¶ 8; Doc. 46 ¶ 3). The Sale Agreement established liens for full fees generated from "Special Contingency Cases" and a specific percentage of fees generated from other "Contingency" cases. (Doc. 44 ¶9; Doc. 46 ¶ 4). As part of the Sale Agreement, Caraway

---

[3] In its statement of material facts, the Wowl Trust alleges that Kolker Law Offices, P.C. signed the Sale Agreement as the seller and that, pursuant to the Sale Agreement, Caraway purchased the Kolker Law Offices for the purpose of performing legal services. (Doc. 46 ¶¶ 1 and 2). As previously noted, the Wowl Trust does not cite to any evidence in the record supporting the claim that Caraway purchased the Kolker Law Office for the purpose of performing legal services or that the Kolker Law Offices signed the Sale Agreement as the Seller. In its reply, BIC admits that Caraway signed the Sale Agreement individually and as Incoming President of Kolker Law Offices but disputes that the Sale Agreement was signed by Kolker Law Office, P.C. because the Seller's name is redacted throughout the contract and the Seller's signature block is redacted.

3

and Kolker Law Offices acquired certain personal property in a building located in Belleville, Illinois. Caraway and Kolker Law Offices also acquired business goodwill, stock, and intangibles valued at $100,000, and the Seller agreed to lend money to Kolker Law Offices, paid off pursuant to a promissory note. (Doc. 44 ¶ ¶ 10-12).

A Promissory Note was signed on March 7, 2013 by Caraway and Kolker Law Offices. (Doc. 44 ¶ ¶ 13-14; Doc. 46 ¶ 5). Through the Promissory Note, Caraway and Kolker Law Offices borrowed $280,000 from the Seller with interest accruing on the unpaid balance until maturity at a rate of 4% per annum. (Doc. 44 ¶ 15; Doc. 46 ¶ 5). The Promissory Note was for a term of 108 months (or 9 years), meaning it was set to mature in March 2023. (Doc. 44 ¶ 16).

On February 5, 2023, the Seller assigned its rights under the Sale Agreement and/or the Promissory Note to Wowl Trust. The document titled "Agreement/Assignment" states that Caraway is in default and owes $753,651.59. (Doc. 44 ¶ ¶ 17-18).

In the Underlying Lawsuit, the Wowl Trust alleges as follows: Caraway failed to make payments required under the Sale Agreement and the terms of the Promissory Note and seeks to collect the amounts "due and owing" (Count I); Caraway knowingly lied and defrauded creditors, including the Wowl Trust (Count II); Caraway "acted willfully and wantonly" in stealing funds owed to the Wowl Trust (Count III); Caraway was an attorney and fiduciary when he signed the Sale Agreement and when he received client fees and costs referenced in the Sale Agreement and promissory Note and that his

conduct violated the appropriate standard of care for an attorney (Count IV). (Doc. 44 ¶¶ 19-32).

The Court in the Underlying Lawsuit entered a default judgment against Caraway and Caraway appealed. (Doc. 44 ¶¶ 33-34). In its appellate brief, the Wowl Trust states as follows:

> Defendant [Caraway] contracted to buy Kolker Law Offices in 2013 when Christopher Kolker was selected to be an Associate Judge in Saint Clair County, Illinois. The law practice collapsed because Defendant and his wife, the firm's bookkeeper, stole over one million dollars from clients and Kolker prior to abandoning the firm in 2023. The scheme involved a course of conduct where he embezzled, converted, stole, and misapplied money from his clients and his firm by secretly using business funds for personal use through a series of misrepresentations and acts of concealment.

(Doc. 44 ¶ 35).

### B. Indictment and Guilty Plea

Caraway was indicted in the United States District Court for the Southern District of Illinois for eleven counts of wire fraud. *United States of America v. Jason Russel Caraway*, Case No. 3:23-cr-30148-NJR (Doc. 1). (Doc. 44 ¶ 36). On February 12, 2025, Caraway signed a plea agreement admitting that he: (1) knowingly devised or participated in a scheme to defraud; and (2) that he did so with intent to defraud; and (3) that the scheme or fraud involved a materially false or fraudulent pretense, representation, or promise; and (4) that for the purpose of carrying out the scheme, Defendant caused wire communications to take place in the manner charged in counts l, 2, 3, 4, 5, and 9 of the indictment. (*Id.* Doc. 26). (Doc. 44 ¶ 38).

5

### C. Notice of the Underlying Lawsuit to BIC

Caraway reported the Underlying Lawsuit to BIC on July 20, 2023. (Doc. 44 ¶ 40; Doc. 46 ¶ 21). July 20, 2023, was the first time BIC received notice of the Underlying Lawsuit from any source. (Doc. 44 ¶ 41).

### D. The Policy

The Lawyers Professional Liability Policy issued by BIC to Caraway & Broombaugh, P.C. as the named insured was initially effective from June 1, 2022 to June 1, 2023. (Doc. 46 ¶ 6).[4] Pursuant to an endorsement to the Policy effective May 1, 2023, the Policy's expiration date was changed to May 1, 2023. (Doc. 44 ¶ 50; Doc. 46 ¶ 7; Doc. 11-1, pg. 24 ("In consideration of the premium paid for this Policy, it is understood and agreed that effective May 01, 2023, the Declarations page of this Policy is amended as follows: Item 2 and 7 of the Declarations is amended to read…Policy Period: From June 01, 2022 (inception date) to May 01, 2023 (expiration date)").

Subject to conditions and exclusions, the Policy as amended by an endorsement (titled "Amend Insuring Agreement to Remove Career Coverage") provides coverage pursuant to the following Insuring Agreement:

> The **Insurer** agrees to pay on behalf of the **Insured** all sums in excess of the deductible, up to the Limit of Liability, that the **Insured** shall become legally obligated to pay as **Damages** and **Claim Expenses** because of a **Claim** that is both first made against the Insured and reported in writing to

---

[4] Lawyers Professional Liability Policy No. No. PLP-1499184-P7

6

the Insurer during the **Policy Period**, or any Extended Reporting Period, if applicable, by reason of an act or omission in the performance of **Legal Services** by the **Insured** or by any person for whom the **Insured** is legally liable, while acting on behalf of the **Named Insured** and/or **Predecessor Firm** for clients of the **Named Insured** and/or **Predecessor Firm** provided that:

>1. no **Insured** gave notice to a **Prior Insurer** of such **Claim** or a **Related Claim**; and/or
>2. no **Insured** gave notice to a **Prior Insurer** of any such act or omission or **Related Act or Omission**; and/or
>3. prior to the inception date of the first policy if continuously renewed, or the date the **Insured** first became a member or employee of the **Named Insured** and/or **Predecessor Firm**, whichever is later, no **Insured** had a basis to believe that any such act or omission, or **Related Act or Omission**, might reasonably be expected to be the basis of such **Claim**.

(Doc. 44 ¶ 51).

The Policy provides the following with respect to Extended Reporting Periods:

As used herein, "Extended Reporting Period" means the period of time after the end of the **Policy Period** for reporting **Claims** that are first made against the **Insured** during the applicable Extended Reporting Period by reason of an act or omission that occurred prior to the end of the **Policy Period** and is otherwise covered by this Policy.

**A. Automatic Extended Reporting Period**

1. If this Policy is canceled or non-renewed by either the **Insurer** or by the **Named Insured**, the Insurer will provide to the **Named Insured** an automatic, non-cancelable 60 day Extended Reporting Period starting at the termination of the **Policy Period** only if there is no other policy or policies that would otherwise provide insurance for such act or omission. This Automatic Extended Reporting Period will terminate after 60 days.
2. The Insurer's liability for all **Claims** reported during the Automatic Extended Reporting Period shall be part of and not in addition to the Limit of Liability for the **Policy Period** as set forth in the Declarations and section II. Limit of Liability and Deductible.

**B. Optional Extended Reporting Period**

1. If this Policy is canceled or non-renewed by either the **Insurer** or by the **Named Insured**, then the **Named Insured** shall have the right to purchase an Optional Extended Reporting Period. Such right must be exercised by the **Named Insured** within 60 days of the termination of the **Policy Period** by providing:
    a. written notice to the Insurer; and
    b. b. with the written notice, the amount of additional premium described below.
    * * *

4. The **Insurer's** liability for all **Claims** reported during the Optional Extended Reporting Period shall be part of and not in addition to the Limit of Liability for the **Policy Period** as set forth in the Declarations and section II. Limit of Liability and Deductible.

(Doc. 44 ¶ 53).

Pursuant to the endorsement to the Policy effective May 1, 2023, the Policy was modified to add the following language:

> In consideration of the payment of the additional premium of [redacted], it is understood and agreed that pursuant to section VI. 8. Optional Extended Reporting Period of this Policy, the **Named Insured** has purchased an Extended Reporting Period of 24 months, which Optional Extended Reporting Period shall commence at 12:01 a.m. on May 1, 2023 and expire at 12:01 a.m. on May 1, 2025. Such Optional Extended Reporting Period applies only to **Claims** that are first made against the **Insured** during the Optional Extended Reporting Period by reason of an act or omission that occurred prior to the end of the **Policy Period** which is otherwise covered by this Policy.

(Doc. 44 ¶ 54; Doc. 11-1, pg. 23).

The Policy defines the term "Claim" to mean the following:

> **Claim** means a demand for money or services, including the service of suit or the institution of any alternative dispute resolution proceeding, received by the Insured arising out of an act or omission, including **Personal Injury**, in the rendering of, or failure to render **Legal Services**.

(Doc. 44 ¶ 57).

## II. LEGAL STANDARD

Summary judgment is proper when there is no genuine dispute as to a material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Med. Protective Co. of Fort Wayne, Ind. v. Am. Int'l Specialty Lines Ins. Co.*, 990 F.3d 1003, 1008 (7th Cir. 2021). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. FED. R. CIV. P. 56(c); *Becker v. Tenenbaum–Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Green v. Carlson*, 826 F.2d 647, 650 (7th Cir. 1987); *Fisher v. Transco Services–Milwaukee, Inc.*, 979 F.2d 1239, 1242 (7th Cir. 1992).

## III. INSURANCE PRINCIPLES

As a federal court sitting in diversity, this Court applies state law to resolve substantive questions. *Harper v. Vigilant Ins. Co.,* 433 F.3d 521, 525 (7th Cir.2005). The parties appear to agree that Illinois law applies, and thus this Court will apply the substantive law of Illinois in addressing the pending summary judgment motion.

Under Illinois law, the primary function in construing an insurance policy is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy. *Cent. Illinois Light Co. v. Home Ins. Co.*, 213 Ill. 2d 141, 153 (2004). "If the words of the policy are clear and unambiguous, they must be afforded their plain, ordinary and popular meaning." *Connecticut Specialty Ins. Co. v. Loop Paper Recycling, Inc.*, 356 Ill. App.

9

3d 67, 73 (1st Dist. 2005). In construing an insurance policy, the court should refrain from creating ambiguities where none exist. *Id.*

Illinois law provides that "the insurer's duty to defend arises when 'the facts alleged in the underlying complaint fall within, or potentially within, the policy's provisions.' " *Mkt. St. Bancshares, Inc. v. Fed. Ins. Co.*, 962 F.3d 947, 951–52 (7th Cir. 2020) (quoting *Crum & Forster Managers Corp. v. Resolution Tr. Corp.*, 620 N.E.2d 1073, 1079 (Ill. 1993)); *see also Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1016–17 (Ill. 2010) ("In a declaratory judgment action such as that presented here, where the issue is whether the insurer has a duty to defend, a court ordinarily looks first to the allegations in the underlying complaint and compares those allegations to the relevant provisions of the insurance policy."). The insured bears the burden of proving that its claim falls within the policy's coverage. *Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 752 (Ill. 2009). Once the insured has established coverage, the burden shifts to the insurer to prove that a limitation or exclusion applies. *Id.*

An insurer's duty to defend is broader than its duty to indemnify. *Pekin Ins. Co.*, 930 N.E.2d at 1017 (citing *Outboard Marine Corp.*, 607 N.E.2d 1204 (Ill. 1992)).

### IV.   DISCUSSION

**A. Motion for Summary Judgment**

First, BIC contends it owes no duty to defend or indemnify Caraway in the Underlying Lawsuit because it does not arise out of the rendering of "legal Services" and therefore is not a "Claim" within the meaning of the Policy. Second, BIC contends that, even if the Underlying Lawsuit is a covered Claim, coverage is precluded because the

10

Claim was not reported during the Policy Period or any applicable Extended Reporting Period. Lastly, BIC argues the Policy's breach of contract, funds, and intentional acts exclusions preclude coverage. The Court finds the second ground dispositive and therefore does not reach the question of whether the Underlying Lawsuit constitutes a covered "Claim" within the meaning of the Policy or whether the referenced exclusions preclude coverage.

The type of policy at issue here is a claims-made policy. *See Mkt. St. Bancshares, Inc. v. Fed. Ins. Co.*, 962 F.3d 947, 952 (7th Cir. 2020) (claims-made policies protect against the risk of an injured party bringing a claim against the insured during the covered period).[5] The Insuring Agreement obligates BIC to pay Damages and Claim Expenses only with respect to:

> A Claim that is both **first made against the Insured and reported in writing to the Insurer during the Policy Period, or any Extended Reporting Period, if applicable**…by reason of an act or omission in the performance of Legal Services…

(Doc. 11-1, pp. 7, 13) (emphasis added). Like the claims-made policy at issue in *Continental Casualty Co. v. Cuda,* coverage is provided under the Policy only if the claim is made *and* reported during the Policy Period (or applicable extended reporting period). 306 Ill. App. 3d 340, 349, 715 N.E.2d 663, 669 (1999).

---

[5] "By way of background, conventional liability insurance policies or 'occurrence' policies 'insure against a negligent or other liability-causing act or omission that occurs during the policy period regardless of when a legal claim arising out of the act or omission is made against the insured' … Because an occurrence policy can expose an insurance company to indefinite future liability, companies often also offer a less expensive option known as a 'claims-made' policy, which generally limits liability to claims made and reported during the policy period." *Pac. Ins. Co. v. Eckland Consultants, Inc.,* No. 00 C 2140, 2001 WL 1388279, at *3 (N.D. Ill. Nov. 5, 2001) (internal citations omitted).

Here, the Policy Period originally ran from June 1, 2022, to June 1, 2023. However, an endorsement effective May 1, 2023 shortened the Policy period, resulting in an expiration date of May 1, 2023. Therefore, the Policy Period during which a claim had to be both made and reported ended on May 1, 2023.

It is undisputed that Caraway was served with the Underlying Lawsuit on February 11, 2023. Thus, to the extent the Underlying Lawsuit constitutes a covered Claim within the meaning of the Policy (a matter the Court does not decide), the Claim was first made against the insured on February 11, 2023 while the Policy Period was still in force. Caraway did not report the Underlying Lawsuit to BIC until July 20, 2023, more than two months after the Policy Period expired on May 1, 2023. The reporting was therefore untimely unless an applicable extended reporting period preserved coverage for a claim that was first made to the insured before the Policy Period ended.

The Policy provides two types of extended reporting periods: (1) an automatic 60-day extended reporting period, and (2) an optional extended reporting period that the insured may purchase. Neither provision assists the Wowl Trust in this case.

The Policy defines "Extended Reporting Period" as: "the period of time **after the end of the Policy Period** for reporting Claims that are **first made against the Insured during the applicable Extended Reporting Period…**and are otherwise covered by this Policy." (Doc. 11-1, pgs. 21-22) (emphasis added). The Optional Extended Reporting Period purchased by Caraway, effective for 24 months beginning May 1, 2023, contains materially identical language. It applies only to:

12

> Claims that are **first made against the Insured during the Optional Extended Reporting Period** by reason of an act or omission that occurred prior to the end of the Policy Period which is otherwise covered by this Policy.

(Doc. 11-1, pg. 23) (emphasis added).

The Policy's language is unambiguous: both the automatic 60-day Extended Reporting Period and the purchased 24-month Optional Extended Reporting Period cover only claims that are first made against the insured after the Policy Period ends (i.e. on or after May 2, 2023) and are reported during the respective Extended Reporting Period windows. Claims that were first made during the Policy Period itself, such as the Underlying Lawsuit, fall outside the scope of either Extended Reporting Period. These provisions do not extend the reporting deadline for claims already made before the Policy expired; they solely create a limited grace period for newly arising claims.

Because the Underlying Lawsuit was first made against Caraway while the Policy was still in force, the Extended Reporting Periods provide no additional reporting window. The Wowl Trust cannot rewrite the clear, negotiated terms of the Policy to obtain coverage the parties never bargained for. Accordingly, neither Extended Reporting Period applies here.

The Court rejects the Wowl Trust's contention that the Policy is ambiguous or silent with respect to reporting obligations when the Policy Period is shortened by endorsement. (Doc. 46, pg. 8). The May 1, 2023 endorsement unambiguously established May 1, 2023 as the expiration date of the Policy Period, and the Policy plainly required that a claim first made during that Policy Period be reported to BIC during the same

Policy Period. The Wowl Trust does not point to any provision of the Policy that creates or suggests a grace period or equitable exception when the Policy Period's expiration date is advanced.

The Court likewise rejects the Wowl Trust's argument that summary judgment is precluded because BIC cannot demonstrate prejudice from the late notice. (*Id*). It is well established that, with respect to claims-made policies, timely reporting within the policy period (or an applicable extended reporting period) is a condition precedent to coverage, and the insurer need not prove that it was prejudiced by untimely notice. *See Hanover Ins. Co. v. R.W. Dunteman Co.*, 446 F. Supp. 3d 336, 348 (N.D. Ill. 2020) ("Courts strictly construe notice requirements in claims-made policies and view notice requirements as valid conditions precedent."); *Executive Risk Indem., Inc. v. Chartered Benefit Servs., Inc.*, No. 03 C 3224, 2005 WL 1838433, at *6 (N.D. Ill. July 29, 2005) ("Given the purpose and function of the reporting requirement in a claims-made policy, such reporting requirements are strictly construed."); *Pacific Ins. Co. v. Eckland Consultants, Inc.*, No. 00 C 2140, 2001 WL 1388279, at *3 (N.D. Ill. Nov. 5, 2001) (unlike occurrence policies, "Illinois law is clear that the issue of prejudice is irrelevant in the context of a 'claims-made' insurance policy").

Because the Claim (the Underlying Lawsuit) was first made against Caraway on February 11, 2023, during the Policy Period, coverage required that it be reported no later than the Policy Period's termination date of May 1, 2023. The Automatic Extended Reporting Period and the Optional Extended Reporting Period provide no refuge for a claim made before the Policy Period ended. Because notice was untimely, BIC is entitled

14

to judgment as a matter of law and a declaration that it has no duty to defend or indemnify Caraway in the Underlying Lawsuit.

### B. Motion for Default Judgment

In requesting default judgment against Caraway, BIC seeks a declaration that it owes no duty to defend or indemnify Caraway in the Underlying Lawsuit. As the Court has decided this case on the merits in BIC's favor in finding that, because notice was untimely, BIC owes no duty to defend or indemnify Caraway in the Underlying Lawsuit, BIC's Motion for Default Judgment will be denied as **MOOT**.

### V. CONCLUSION

For the foregoing reasons, summary judgment is **GRANTED** in favor of Berkley Insurance Company the Court **DECLARES** as follows:

> Berkley Insurance Company owes no duty to defend or indemnify under the Lawyers Professional Liability Policy No. PLP-1499184-P7 with respect to the underlying lawsuit filed by the Wowl Trust against Caraway, styled *Wowl Trust – Trustee Dean Devert v. Jason Caraway*, case number 23LA0142, previously pending in the Circuit Court for the Twentieth Judicial Circuit in St. Clair County, Illinois.

Berkley's request for default judgment as to Jason Caraway is **DENIED** as **MOOT**.

The Court **DIRECTS** the Clerk to close the case and to enter judgment accordingly.

**SO ORDERED.**

Dated**:** November 25, 2025

/s/ *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge

15